UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| REGINA L. ROBERTS, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) Case No.: 1:16-cv-2125-DML-JMS |
| NANCY A. BERRYHILL, Acting Commissioner of the Social Security, Administration, | ) |
| Defendant. | ) |

# Decision on Complaint for Judicial Review

Plaintiff Regina L. Roberts applied for Disability Insurance Benefits (DIB) under Title II of the Social Security Act and Supplemental Security Income (SSI) under Title XVI of the Social Security Act, alleging disability since January 2011. She later amended her alleged disability onset date to December 12, 2012. Acting for the Commissioner of the Social Security Administration following a hearing held on December 23, 2014, an administrative law judge (ALJ) found that Ms. Roberts is not disabled. The Appeals Council denied review of the ALJ's decision on June 7, 2016, rendering the ALJ's decision for the Commissioner final. Ms. Roberts timely filed this action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

The court will first describe the legal framework for analyzing disability claims and the standard of review and then address Ms. Roberts's assertions of error.

## Standard for Proving Disability

To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A) (DIB benefits); 42 U.S.C. § 1382c(a)(3)(A) (SSI benefits).[1] Ms. Roberts is disabled if her impairments are of such severity that she is not able to perform the work she previously engaged in and, if based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then she is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 1520(c). The

---

[1] Two disability-benefits programs are available under the Social Security Act: DIB under Title II for persons who have achieved insured status through employment and withheld premiums, 42 U.S.C. § 423 *et seq.*, and SSI disability benefits under Title XVI for uninsured individuals who meet income and resources criteria, 42 U.S.C. § 1381 *et seq.* The court's citations to the Social Security Act and regulations promulgated by the Social Security Administration are those applicable to DIB benefits. For SSI benefits, materially identical provisions appear in Title XVI and at 20 C.F.R. § 416.901 *et seq.*

third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.  The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits.  *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then her residual functional capacity (RFC) is determined for purposes of steps four and five.  RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations.  20 C.F.R. § 404.1545.  At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled.  The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on her age, work experience, education, and RFC; if so, then she is not disabled.

The individual claiming disability bears the burden of proof at steps one through four.  *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987).  If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given her age, education, work experience, and functional capacity.  *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R. § 404.1560(c)(2).

## Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for the decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ's decision need not address every piece of evidence, but the ALJ cannot ignore an entire line of evidence that undermines his conclusions, and he must provide sufficient detail to allow a reviewing court to trace the path of his reasoning. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012).

## Analysis

### I. The ALJ's Sequential Findings

Ms. Roberts was 45 years old on the alleged disability onset date, and 47 years old at the time of the ALJ's decision. The ALJ found that she met the insured status requirements of the Social Security Act through December 31, 2012, and she had not engaged in substantial gainful activity since that date. At steps two and three, he found that Ms. Roberts has severe impairments of degenerative disc disease, diabetes mellitus with neuropathy, and obesity, but no impairment or

4

impairments that meet or medically equal the severity of a listed impairment. The ALJ also determined that Ms. Roberts had several non-severe impairments, including COPD, bilateral carpal tunnel syndrome status post trigger finger surgery, and depression.

In the RFC, the ALJ limited Ms. Roberts to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) "with only occasional lifting of 20 pounds; frequent, as opposed to constant, lifting of 10 pounds; standing for six hours in an eight-hour workday, sitting for six hours in an eight-hour workday; only occasional stair climbing, stooping, balancing, kneeling, crouching, crawling; and only occasional exposure to hot and cold temperature extremes, humidity, and vibrations." (R. 25). With this RFC, and based on the opinion of a vocational expert (VE), the ALJ decided that Ms. Roberts is capable of performing her past relevant work as a cashier and retail store manager. Accordingly, he decided at step four that Ms. Roberts is not disabled. The ALJ did not reach step five.

## II.  Ms. Roberts's Assertions of Error

Ms. Roberts raises several alleged errors. She challenges the ALJ's listing analysis of her neuropathy. She contends that the RFC determination is not based on substantial evidence because it is based on an erroneous assessment of her credibility, erroneous consideration of her primary care physician's opinion, and fails to account for several of her limitations due to her impairments. She also argues that the ALJ's analysis at step four does not permit meaningful judicial review and is erroneous.

5

**A. The ALJ's Analysis of Neuropathy under Listing 11.00**

The court first reviews the ALJ's step three listing analysis of Ms. Roberts's neuropathy. "In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than [a] perfunctory analysis of the listing." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (quoting *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)).

The ALJ analyzed Ms. Roberts's diabetic neuropathy under Listing 11.00 for neurological impairments (which includes Listing 11.14 for peripheral neuropathy) and determined:

> [T]he claimant does not have peripheral neuropathy with disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station, in spite of prescribed treatment. The claimant does not require an assistive device to walk and she had a normal gait and fine finger movements during her June 2013, consultative exam.

(R. 25) (citations omitted).

Although the ALJ's decision discusses evidence that would support the finding that Ms. Roberts did not meet or equal the listing, the decision fails to reflect consideration of evidence that could show she meets or equals the listing. For example, the ALJ notes that on May 2, 2013, Ms. Roberts's gait was intact; on June 6, 2013, although she had difficulty tandem walking, her gait and station were "otherwise normal"; and at the June 2013 consultative exam, her gait was normal, she was able to walk on heels and toes, and she was not using an assistive device. (R. 26–27). The ALJ fails to mention that on several occasions Ms. Roberts was diagnosed with ataxic gait (unsteady, uncoordinated, staggering gait) and physical

6

exams showed gait instability, unsteady or ataxic gait, positive Romberg's test (reflecting loss of balance), and abnormal monofilament wire testing (used to detect loss of sensation and peripheral neuropathy, especially in feet). (R. 793, 393-94, 930, 1152 1174-75, and 1991). Because objective medical evidence supports a finding that Ms. Roberts's meets or equals Listing 11.00 and the ALJ's analysis selectively discussed evidence that supported his conclusion, the court cannot conclude that the step-three analysis was sufficient. *See Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) (stating "an ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it"). This requires a remand.

**B. The ALJ's RFC Determination**

Ms. Roberts argues that the ALJ erred by assessing an RFC that was not supported by substantial evidence. She challenges the ALJ's assessment of her credibility and consideration of the opinion from her treating physician, Paige Huls, M.D. Ms. Roberts also maintains that the RFC should include limitations in walking, manipulative limitations, and mental limitations.

A claimant's RFC is "the maximum she can do in a work setting despite her mental and physical limitations." *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014) (citing 20 C.F.R. § 404.1545(a)). When determining RFC, "the ALJ must consider all limitations that arise from medically determinable impairments," whether the impairments are severe or non-severe. *Id.*

Ms. Roberts argues that the ALJ erred in discounting the opinion of treating physician Dr. Huls. The physician provided a medical source statement, dated September 23, 2013, opining on Ms. Roberts's physical ability to do work-related activities. (R. 974-77). Dr. Huls's statement supports a more restrictive RFC than that found by the ALJ. For example, Dr. Huls found that Ms. Roberts could lift only about 5 pounds less than one hour a day, could stand and/or walk less than 2 hours in an 8-hour work day, and that she has manipulative limitations. (*Id.*) In support of her opinion, Dr. Huls identified Ms. Roberts's back and leg pain, unbalanced gait, leg weakness, carpal tunnel syndrome, numbness in feet, diminished sensation to light touch in lower legs, decreased sensation in thumb through fourth digit bilaterally, ataxia/unsteady gait, poor balance, and poor proprioception. (*Id.*)

Generally, more weight is given to the opinion of a medical source who examines a claimant than to the opinion of a non-examining source. 20 C.F.R. §404.1527(c)(1). The ALJ must give good reasons supported by substantial evidence in the record for discounting an examining source's opinion. *See, e.g., Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). And if a treating source's opinion on the "nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record" it will be given controlling weight. *Minnick*, 775 F.3d at 938 (quoting 20 C.F.R. §404.1527(c)(2)).

The ALJ gave Dr. Huls's opinion little weight, finding it inconsistent with evidence of record. (R. 29). He first noted that Ms. Roberts can drive and found that her activities of daily living indicate that despite her pain, she is an active grandmother. The ALJ thought Dr. Huls's opinion was inconsistent with her own records. He also relied on the consultative examination, a June 2013 nerve conduction study that showed no evidence of polyneuropathy, radiculopathy, myopathy, plexopathy, or neuropathy; a July 2014 MRI of her spine showing only mild osteoarthropathy; Ms. Roberts's rating of her pain as 0/10 in October 2014; and the state agency medical consultants' opinions.

In deciding that Dr. Huls's opinion is inconsistent with her own exam findings, the ALJ cited Exhibit 11F. (R. 29). But Exhibit 11F is not Dr. Huls's record; it is a report by Dr. Kuimil K. Mohan, M.D. (Exhibit 11F). The Commissioner suggests that the ALJ "purportedly" confused Dr. Huls's reports with other evidence in the record, but this after-the-fact explanation does not alter the fact that the ALJ's conclusion on this issue was unsupported. This was error and affected the ALJ's weighing of Dr. Huls's opinion.

Further, both Dr. Huls's and Dr. Mohan's records are supportive of and consistent with the former's opinion as to Ms. Roberts's limitations. While Dr. Huls's June 2013 exam did not indicate any findings to support standing, walking, and manipulative limitations, there was no reason for that report to do so. (R. 926). On that occasion, Dr. Huls was seeing Ms. Roberts for complaints of a rash on her legs. (R. 924). Nonetheless, the June 2013 report indicates that ataxic gait and

9

diabetic peripheral neuropathy are active problems; Dr. Huls assessed Ms. Roberts with ataxic gait and diabetic peripheral neuropathy. (R. 924-26). And Dr. Mohan indicated, among other findings, that rapid eye movements seemed to make Ms. Roberts dizzy, knee and ankle reflexes could not be elicited, and she had difficulty walking tandem. (R. 893). The physician also wrote that Ms. Roberts's gait instability was chronic and active and appeared to be caused by a combination of neuropathy and vertigo. (R. 894).

Although the ALJ focuses on evidence that may be inconsistent with Dr. Huls's opinion as to M. Roberts's limitations, "[a]n administrative law judge 'must confront the evidence that does not support [his] conclusion and explain why that evidence was rejected.'" *Taylor v. Colvin*, 829 F.3d 799, 802 (7th Cir. 2016) (quoting *Moore*, 743 F.3d at 1123). Other medical records support Dr. Huls's opinion as to Ms. Roberts's limitations. In early May 2013, Dr. Huls examined Ms. Roberts and found diminished sensation to light touch in feet, positive Romberg's, and an abnormal monofilament wire test. (R. 793). She diagnosed diabetic peripheral neuropathy with ataxic gait. (*Id.*) Two weeks later, Dr. Huls again examined Ms. Roberts, assessed her with ataxic gait and tingling (paresthesia), and referred her for a neurological evaluation. (R. 930-31). The consultative physician, James Auckely, M.D., examined Ms. Roberts in June 2013, noting normal gait and station, but decreased lower leg pulses; he also noted that she tends to lose her balance. (R. 900-01). Upon examination in September 2013, Dr. Mohan noted Ms. Roberts had decreased sensation in her extremities and exhibited an unsteady gait. (R. 1991).

Dr. Huls examined Ms. Roberts in October 2013 and found sensory abnormalities, a positive Romberg's test, an abnormal monofilament wire test, and an abnormal ataxic gait. (R. 1175). The record from a January 2014 neurology consultation indicated that Ms. Roberts has recurrent bilateral carpal tunnel syndrome based on her EMG nerve conduction study and suggested she has ulnar nerve involvement and trigger finger in her right thumb. (R. 1015). Dr. Huls examined Ms. Roberts at the end of February 2014, and found decreased sensation to light touch in her feet, poor balance, positive Romberg's test, and an abnormal monofilament wire test. (R. 1152).

Similarly, objective testing supports Dr. Huls's opinions. The May 2013 and July 2014 MRIs of Ms. Roberts's lumbar spine showed facet osteoarthropathy bilaterally and mild bilateral foraminal narrowing. (R. 859, 1098-99). Although the June 2013 EMG and nerve conduction studies showed no evidence of polyneuropathy or neuropathy, they did show evidence of severe carpal tunnel syndrome on the right. (R. 913-14). Dr. Mohan noted in September 2013 that he had reviewed EMG testing that showed "evidence of significant neuropathy," (R. 1988), and an EMG reviewed in October 2013 showed mild-to-moderate left carpal tunnel syndrome and moderately severe right carpal tunnel syndrome. (R. 1023). A February 2014 EMG showed mild to moderate left cubital tunnel syndrome or ulnar neuropathy. (R. 1213). A contemporaneous medical note from Richard French, M.D., indicated that Ms. Roberts has mild to moderate left cubital tunnel syndrome;

11

recurrent bilateral carpal tunnel syndrome, right greater than left; diabetic polyneuropathy; and left diabetic thoracic radiculopathy. (R. 1012).

In defending the ALJ's decision to give Dr. Huls's opinion little weight, the Commissioner, like the ALJ, emphasizes evidence that detracts from that opinion, but disregards evidence that supports it. (See *Def.'s Mem. Support Comm'r's Decision*, docket no. 25 at 17 (arguing that on examination Dr. Huls repeatedly found normal gait, normal muscle strength, and negative straight leg raising, but not mentioning the sensory abnormalities, positive Romberg's, and abnormal monofilament wire tests that were repeatedly noted)). The Commissioner also argues that the month after Dr. Huls gave her opinion, Ms. Roberts injured herself while roller skating, asserting the fact that Ms. Roberts was able "to even attempt roller-skating" is inconsistent with the physician's limitations. (*Id.*) But the ALJ did not mention this roller-skating incident, and the Commissioner's *post hoc* rationale cannot be substituted for the reasoning provided by the ALJ. *See SEC v. Chenery Corp.*, 318 U.S. 80, 90-93 (1943). Besides, the fact that Ms. Roberts injured herself while roller skating may support her claims as to the extent of her symptoms and limitations. She did, after all, fall and injure her head.

The Commissioner erroneously argues that the record contains four other opinions on Ms. Roberts's physical functioning. But there are only two others—the opinions of the state agency reviewing physicians, and they never examined Ms. Roberts. While Dr. Auckely and Dr. Mohan examined Ms. Roberts and reported their findings, neither of them opined on Ms. Roberts's functional limitations. And,

12

as stated, parts of these physicians' reports are consistent with Dr. Huls's opinion—Dr. Auckely indicated that Ms. Roberts tends to lose her balance, and Dr. Mohan said that she had chronic and active gait instability.

In sum, the ALJ's errors in considering the weight to be given Dr. Huls's opinion require a remand.

As noted, Ms. Roberts also contends that the ALJ erred in assessing her credibility. An ALJ's credibility determination is reviewed deferentially and will be overturned only if "patently wrong." *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008). The credibility determination must contain specific reasons supported by the evidence and be sufficiently specific as to allow for meaningful review. *See id.*

In addressing credibility, the ALJ wrote that Ms. Roberts reported in February 2013 that she was having trouble finding a job and was having to "take care of kids," finding these assertions inconsistent with allegations of constant pain and an inability to work. (R. 28). The ALJ also pointed to inconsistencies between Ms. Roberts's claims and findings on the consultative examination with Dr. Auckely, Ms. Roberts's denial in September 2014 of any numbness or tingling in her hands, her noncompliance with her diabetic and celiac diets, and her continued smoking despite being advised to quit.

The ALJ's credibility determination is troubling. The fact that Ms. Roberts was looking for a job does not negate the possibility that she is in constant pain and unable to work. A person may work or attempt to find work despite being disabled. *See Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005) ("A person can be totally

13

disabled for purposes of entitlement to social security benefits even if, because of an indulgent employer or circumstances of desperation, he is in fact working."). Ms. Roberts had not succeeded in finding a job, perhaps because the available work is beyond her abilities. Even if she found a job, she may not be capable of sustaining employment. And the ALJ overemphasizes her statement about taking care of kids. Ms. Roberts testified that she helped her daughter with her two children "sometimes," but normally they go to day care or preschool. (R. 49). She also stated that she had attempted babysitting in 2012, but had to quit after one week because her "arms gave out" and she dropped a child. (R. 50). An ALJ should be careful not to equate a claimant's daily activities to full-time work. *See, e.g.*, *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). While Ms. Roberts has not been compliant with her diabetic and celiac diets and has not stopped smoking, the ALJ was required to seek an explanation from her before drawing any negative inferences from it. But he never asked her about it. *See, e.g.*, *Beardsley v. Colvin*, 758 F.3d 834, 840 (7th Cir. 2014) ("It is true that infrequent treatment or failure to follow a treatment plan can support an adverse credibility finding where the claimant does not have a good reason for the failure or infrequency of treatment. But the ALJ may not draw any inferences "about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care.") (quotation and citations omitted). In any event, after reconsidering

Dr. Huls's opinion as to Ms. Roberts's functioning, the ALJ may have to reassess Ms. Roberts's credibility.[2]

The ALJ further erred, according to Ms. Roberts, by failing to include in his RFC finding any limitations on walking, manipulation, or mental abilities. Further consideration of Dr. Huls's opinion and the evidence supporting her opinion may necessitate reconsideration of Ms. Roberts's limitations as to walking and manipulation.

As for mental impairments, the only mental limitation Ms. Roberts suggests is in her ability to maintain concentration, persistence, and pace. The ALJ found that her depression "does not cause more than minimal limitation in her ability to perform basic mental work activities and is therefore nonsevere." (R. 23). The ALJ found mild limitations in the three functional areas (activities of daily living, social functioning, and concentration, persistence and pace. (R. 23-24). But he omitted any mental limitation in the RFC finding.

The psychological consultative examiner found Ms. Roberts's to have low energy and slow thought processes at times (R. 905), but also reported that she had good attention, concentration, and mental calculation abilities; she had good conceptual and abstract thinking abilities; and she was capable of following directions and interacting appropriately with others. (R. 907-08). The psychologist suggested that Ms. Roberts's moderate depressive symptoms would affect her

---

[2] If the credibility challenge were the only grounds on which Ms. Roberts sought a remand, a remand might not be appropriate. But that is not the case; other more serious errors require further consideration on remand.

ability to work. (R. 908 (indicating that ability to work would primarily be affected by medical/physical problems and secondarily by depressive symptoms)). Substantial evidence—the psychologist's opinion— supports the conclusion that Ms. Roberts was not limited in the ability to maintain concentration, but it does not appear that the psychologist addressed persistence and pace. Therefore, further consideration of Ms. Roberts's mental limitations, especially with regard to persistence and pace, is necessary.

### C. The Step-Four Determination

Lastly, Ms. Roberts challenges the ALJ's step-four determination, arguing that it is not based on substantial evidence and cannot be meaningfully reviewed. The Commissioner responds that the step-four error was nothing more than a scrivener's error. The court disagrees. The step-four finding is based on flawed evidence and does not allow for meaningful review.

First, the evidence on which the ALJ's step-four finding was based is, at best, confusing. Before the hearing, the VE reviewed the exhibits in the file regarding Ms. Roberts's work history and completed a past relevant work summary, identifying two jobs as past relevant work: cashier and manager of a retail liquor store. (R. 301). The VE's handwriting is difficult to read, but it appears that he assigned the cashier job a Dictionary of Occupational Titles (DOT) Code # of 211.362-010 and an SVP of 3 corresponding to semi-skilled work, and described it as light work. (*Id.*) He indicated that the manager position had a DOT Code # of 185.167-046, an SVP of 7 corresponding to skilled work, and was light work. (*Id.*)

16

At the hearing, the VE confirmed his assessment of Ms. Roberts's past relevant work. (R. 61-63). However, he was not asked to clarify the DOT Code numbers he had handwritten on the past work summary.

The ALJ found that Ms. Roberts was capable of performing her past relevant work as a cashier, DOT Code #216.362-010, light, semi-skilled; and as a retail store manager, DOT Code #185.167-046, light, semi-skilled. (R. 29-30). There are several problems with this finding.

First, the ALJ identifies a position with a DOT Code #216.362-010, but no such DOT Code number exists. The Commissioner suggests the ALJ meant to identify the cashier position with DOT Code #211.362-010, but the cashier job under that number has an SVP of 5, making it skilled work, and describes a job for someone performing such tasks as cashing checks, preparing bank deposit slips, and running bank reports. That job description is nothing like the work that Ms. Roberts actually performed—she was a cashier at a liquor store—and the VE indicated her past cashier work had an SVP of 3. Thus, even if the Commissioner were right and the ALJ meant to refer to DOT Code # 211.362-010, the ALJ's finding is inconsistent with the VE's testimony and not based on substantial evidence. Furthermore, the ALJ erroneously found that the retail store manager job was semiskilled; it is a skilled position, as the VE testified. (R. 63). These

errors prevent this court from conducting meaningful review of the ALJ's step-four analysis.[3]

## Conclusion

For the foregoing reasons, the court REVERSES AND REMANDS the Commissioner's decision under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision.

So ORDERED.

Date: 9/7/2017

*Debra McVicker Lynch*
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system

---

[3] The Commissioner contends that even assuming the ALJ erred with respect to the cashier position, substantial evidence supports his finding that Ms. Roberts could perform her past work as a retail store manager. If the step-four errors were the only errors, then a remand might not be necessary. But Ms. Roberts has identified other errors that require remand and that, if resolved in her favor, may affect the step-four findings.